**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

In re:                          )
                                )
Donald Davenport,               )     Chapter 7
                                )     Case No. 10-10895
            Debtor              )

**MEMORANDUM OF DECISION**

Donald Davenport ("Davenport") is the debtor in this Chapter 7 case. He is over sixty and claims the one-half interest in the residence he shares with his non-debtor wife to be exempt to the extent of $95,000 under the age-enhanced provision of the applicable state exemption law.[1] The Estate of Wendy Hosford ("Hosford") holds a consensual judgment against Davenport for intentional torts secured by an undisputed pre-bankruptcy judicial lien. Davenport wants to avoid Hosford's lien under subsection 522(f) of the Bankruptcy Code because it impairs his exemption.[2] Hosford objects to Davenport's age-enhanced exemption claim and to his request to avoid her lien.[3] She argues that the tort qualification in the exemption statute precludes Davenport from claiming more than $47,500. See 14 M.R.S.A. § 4422(1)(B) ("This paragraph [providing for the age-enhanced exemption of $95,000] does not apply . . . to judgments based on torts involving other than ordinary negligence on the part of the debtor.").

---

[1] The current, generally applicable residence exemption under Maine law is $47,500. See 14 M.R.S.A. § 4422(1)(A). For debtors who are over sixty, the exemption is $95,000, unless certain exclusions apply. See 14 M.R.S.A. § 4422(1)(B).

[2] All references to a specific statutory section (other than obvious references to state exemption law) or to a provision of the "Bankruptcy Code" or the "Code" shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, et seq.

[3] In referring to the Hosford Estate, "she" and "her" shall be used in lieu of "it" and "its".

Both of Hosford's objections are denied. Davenport's residence exemption claim is allowed in the amount of $95,000 and Hosford's lien shall be avoided completely. This memorandum contains my findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

## FACTS

Davenport was accused of sexually molesting Wendy Hosford, his step-daughter, while she was a minor. A consensual civil judgment for that misconduct was entered in Maine in 1998. A lien followed attaching to the one-half interest in the residence Davenport shares with his wife in Hallowell, Maine. Wendy later died from an apparent suicide.[4] On March 4, 2010, Hosford obtained a state court order of sale of Davenport's interest in the residence. In rendering that order the state court accepted the municipal tax valuation of $191,400 to be the value of the residence and determined Davenport's interest to be worth $63,319.32 after deducting the combined value of the liens. The state court also fixed Davenport's exemption *vis-á-vis* Hosford at $47,500 based upon the tort qualification. Davenport sought relief in this court before any sale occurred and has received the protection of the automatic stay.

Davenport's bankruptcy schedules show the value of his one-half interest in the residence to be $78,500 based upon a "broker's price opinion" of $157,000. The schedules also show secured claims in the amount of $177,744, including the Hosford lien in the amount of $111,000, a mortgage debt in the amount of $64,739, and an execution lien in the amount of $2,005. The schedules also reveal Davenport's age-enhanced exemption claim of $95,000.

---

[4] Hosford has commenced an action in this court to determine the dischargeability of her claim for willful and malicious injury under 11 U.S.C. § 523(a)(6). Davenport's admission of the consensual judgment for intentional torts in this contested matter may or may not be taken as an admission of willful and malicious injury in the dischargeability action. For the moment, the claims and defenses of both parties in that action have been fully reserved.

**JURISDICTION**

The district court has original, but not exclusive jurisdiction of all civil proceedings arising under the Bankruptcy Code. See 28 U.S.C. § 1334(b). These contested matters are such proceedings. They are also core proceedings under 28 U.S.C. § 157(b)(2)(B),(K) and (O). As such, they have been referred to this court for final determination. See 28 U.S.C. § 157(a); D. Me. R. Civ. P. 83.6(a). Venue is appropriate under 28 U.S.C. § 1409(a).

**DISCUSSION**

The commencement of a bankruptcy case creates a bankruptcy estate comprised of all of a debtor's legal and equitable interests in property. See 11 U.S.C. § 541(a)(1); Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 323 (1st Cir. 2008). "Section 541 is construed broadly to bring in any and all of the debtor's property rights within the bankruptcy court's jurisdiction and the umbrella of protections granted by the Bankruptcy Code, and to promote the goal of equality of distribution." Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.), 335 B.R. 253, 259 (B.A.P. 1st Cir. 2005) (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.9 (1983)). Federal law governs whether an interest in property is property of the estate, but state law will determine what constitutes a legal or equitable interest for bankruptcy purposes. See Butner v. United States, 440 U.S. 48, 54 (1979). On these premises, it is clear that Davenport's interest in the residence he shares with his wife became property of the bankruptcy estate upon the commencement of this case.

An individual debtor may exempt property from the bankruptcy estate under either federal or state law unless state law "specifically does not so authorize." See 11 U.S.C. § 522 (b)(1) and (2). In such event only state law will apply. The parties agree that Maine is an opt-

out state and that state exemptions are mandatory in this case. The opt-out provision of the Maine statute provides:

> Notwithstanding anything to the contrary in the United States Code, Title 11, Section 522(b), a debtor may exempt from property of the debtor's estate under United States Code, Title 11, only that property exempt under the United States Code, Title 11, Section 522 (b)(2)(A) and (B), *except that any debtor eligible for a residence exemption under section 4422, subsection 1, paragraph B, may exempt the amount allowed in that paragraph.*

14 M.R.S.A § 4426 (Emphasis supplied.). The efficacy of § 4426 has not been questioned by either party even though this section has not been amended since the enactment of BAPCPA and now contains an obsolete reference to the Bankruptcy Code. Because the effectiveness of § 4426 has not been challenged and because the outcome in this case will be determined ultimately on federal law, I will take my cue from the parties' silence and accept Davenport's use of the state residence exemption as compulsory in this case.[5] This approach begs a comment on the significance of the proviso at the end of § 4426.[6]

This proviso, italicized above, allows a debtor to exempt an interest in a residence from the bankruptcy estate in the amount allowed in § 4422(1)(B). Currently, that amount is $95,000 for a debtor over sixty. The wording is not ambiguous and contains no express reference to any qualification on the availability of the age-enhanced exemption found in Maine's residence

---

[5] Doing so also conforms to my forecast of how Maine's highest court would rule on the efficacy of § 4426. In determining an unsettled question of state law in the absence of an authoritative decision, "we must predict, as best we can, that court's resolution of the issue before us," Kunelius v. Town of Stow, 588 F.3d 1, 9 (1st Cir. 2009), or certify the question. See In re Engage, Inc., 544 F.3d 50, 52 (1st Cir. 2008). My prediction is that the Supreme Judicial Court would honor the Legislature's intent to opt-out of the federal exemptions for three reasons: First, the only problem with the currency § 4426 is that it contains an obsolete Bankruptcy Code citation; second, this citation may be taken as a reference to § 522 (b)(3)(A) and (B) of the present Code without violating any state or federal purpose; and, third, doing otherwise could create havoc in the administration of bankruptcy cases in Maine.

[6] If I were to ignore § 4426 as a defunct opt-out provision, the debtor's selection of the Maine residence exemption would be applicable as an acceptable alternative to the federal exemption. See 11 U.S.C. § 522(b)(1) and (2). Such an approach would not alter my conclusions.

exemption. Thus, § 4426 is in accord with federal bankruptcy law which preempts state law on the availability of exemptions in bankruptcy cases. See Owen v. Owen, 500 U.S. 305, 313-14 (1991)("[W]e conclude that Florida's exclusion of certain liens from the scope of its homestead exemption does not achieve a similar exclusion from the Bankruptcy Codes's lien avoidance provision."); In re Weinstein, 164 F.3d 677, 683 (1st Cir. 1999), (cert. denied, 527 U.S. 1036 (1999))(§ 522(c) preempts state exemption law that limits homestead exemption to debts incurred after debtor claims exemption); Bruin Portfolio v. Leicht (In re Leicht), 222 B.R. 670, 677 (1st Cir. BAP 1998)("[T]hose provisions of the Massachusetts homestead statute that limit the exemption's vitality against certain categories of claims cannot hold sway against conflicting Code provisions."); In re Dubois, 306 B.R. 423, 428 n.7 (Bankr, D. Me. 2004)(discussing the qualification on the availability of Maine's residence exemption for liens obtained prior to the effective date of the statute.).

Property exempted under § 522 is not liable for any debt arising before or after a bankruptcy case except the following: a debt for certain tax liabilities, a domestic support obligation, a debt secured by a lien that is not avoided, a debt for fraud or defalcation or willful and malicious injury by certain financial institutions, and debt in connection with fraud relating to financing an education at an institution of higher education. See 11 U.S.C.§ 522(c). Hosford's judgment does not fall within the "limited universe of claims provided such preferred treatment under § 522(c). . . ." See Dubois, 306 B.R. at 428, n.7. And this will remain so even if Hosford prevails on her complaint to determine her claim to be nondischargeable for willful and malicious injury under for § 523 (a)(6). The exception for willful and malicious injury in § 522 (c) is limited to a debt "owed by an institution-affiliated party of an insured depository . . . ." See 11 U.S.C. § 522(c)(3). Hosford does not fall into that category.

Without expanding or contracting the "limited universe" of claims described in subsection 522(c), subsection 522(f) allows a debtor to avoid "the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption . . . ." See 11 U.S.C. § 522(f)(1). There is no exception in subsection (f) for a lien arising from a nondischargeable debt unless that debt is among those reserved for preferred treatment under § 522(c).[7]

Subsection 522(f) provides that a judicial lien "shall be considered to impair an exemption to the extent that the sum of (i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens." See 11 U.S.C. § 522(f)(2)(A). The agreed value of Hosford's judicial lien is $111,000. The agreed value of all other liens on the property is $67,744. The value of the entire residence is disputed. But even if I use Hosford's higher assertion of $191,400 to arrive at the value of Davenport's one-half interest, the unqualified exemption of $95,000 will be impaired fully by Hosford's lien.

Viewing this to be an anomalous result, Hosford insists that § 4422(1)(B) should be applied in bankruptcy with the tort qualification intact as it was applied by the state court in the sale order. This would give Davenport a residence exemption of no more than $47,500 and could preserve part of Hosford's lien. Her approach presumes a willingness on my part to infer that there is an implied tort qualification in Maine's opt-out provision. To do that I would need to ignore the plain meaning of § 4426 and the doctrine of federal preemption. Also, I would

---

[7] The two cases cited by Hosford in support of her contrary argument are inapposite. In Castle v. Parrish (In re: Parrish), 29 B.R. 869. 874 (Bankr. S. D. Ohio 1983), the court held that a lien arising from a domestic support obligation in a chapter 13 case could not be avoided until a discharge was granted upon successful completion of the plan. In In re Byrd, 15 B.R. 154. 157 (Bankr. Va. 1981), the court refused to avoid a lien for fraud in a fiduciary capacity under a provision of Virginia exemption law, without any discussion of § 522(c).

need to suppose that Hosford and the bankruptcy estate are on an equal footing under the Maine statute.[8] They are not. The tort qualification was applied by the state court to Davenport *vis-á-vis* Hosford because Hosford held a judgment against Davenport for other than ordinary negligence. The bankruptcy estate holds no such judgment.[9]

## CONCLUSION

Davenport's residence exemption claim is allowed in the amount of $95,000. On that basis Hosford's lien shall be avoided completely even if her claim is not discharged. A separate order will follow.

DATED: January 12, 2011

_____
Louis H. Kornreich, Chief Judge
United States Bankruptcy Court

---

[8] The parties did not develop fully the issue of res judicata, perhaps with good reason. Under the full faith and credit statute, 28 U.S.C. § 1738, a federal court should award the same preclusive effect to a state court judgment that the state would give it. See In re Slosberg, 225 B.R. 9, 13 (Bankr. D. Me 1998). Under Maine law:

> The doctrine of res judicata is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once. The doctrine has developed two separate components, issue preclusion and claim preclusion, Issue preclusion, also referred to as collateral estoppel, prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding. Claim preclusion bars relitigation if (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision were, or might have been litigated in the first action.

Machias Savings Bank v. Ramsdell, 689 A.2d 595, 599 (Me. 1997). Neither issue preclusion nor claim preclusion would apply in this case because the issue of whether the debtor was entitled to exempt his interest in the residence from the bankruptcy estate was not, nor could it have been, litigated in the state court.

[9] Upon the commencement of a bankruptcy case, the trustee is vested with the rights and powers of a lien creditor and becomes the successor to certain real or hypothetical creditors and purchasers of the debtor's property *vis-á-vis* other creditors and purchasers of property. See 11 U.S.C. § 544. But this investment of rights and powers in the trustee has no bearing upon the actual property interests acquired by the estate upon the commencement of the case. See 11 U.S.C. § 541. Specifically, upon the commencement of this case, the bankruptcy estate acquired no claim against Davenport based on a judgment for other than ordinary negligence.